IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANCO PANAMERICANO, INC., a South Dakota Corporation, ) ) ) | |
| Plaintiff-counterdefendant, ) ) | |
| v. ) ) | No. 07 C 15 |
| CONSORTIUM SERVICE MANAGEMENT GROUP, INC., also known as CONSORTIUM MANAGEMENT GROUP, INC., a Texas Corp and CSMG GASTECH, LLC, a Texas LLC, ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants-counterplaintiffs. ) | |

## MOTION TO MODIFY MINUTE ORDER

Defendants Consortium Service Management Group, Inc., and CSMG Gastech, LLC (collectively, "CSMG"), by their counsel David K. Schmitt of Golan & Christie, LLP, move this Court to modify its Minute Order dated January 29, 2009 granting the Motion for Turnover Order filed by Plaintiff Banco Panamericano, Inc. ("Banco") and to reject the proposed draft orders proffered thereby, and state as follows:

### Introduction

On August 28, 2008, this Court entered judgment in favor of Banco and against CSMG in the amount of $203,800.00, which it amended to $726,491.914 on December 16, 2008 (the "Judgment"). Thereafter, Banco filed its Motion for Turnover Order (the "Turnover Motion"), targeting three assets of CSMG: (1) the $CO_2$ Scrubber located in Chastang, Alabama; (2) ownership of stock in Live Tissue Connect, Inc. ("LTC Stock"); and (3) certain worldwide patents on technology ("Patents"). Collectively, Banco refers to these assets as the "Turnover

Assets." The Turnover Motion contemplates –indeed, specifically requests – that the Court order CSMG to give this personal property over to Banco, directly.

On January 29, 2009, over the objection of CSMG, this Court granted the Turnover Motion by Minute Order. The Turnover Motion was and is improper in its requests, and the Minute Order granting that motion is equally unsound, as federal and Illinois state law are consistent in the requirement that a judgment debtor's non-exempt personal property must be turned over only to the sheriff, to be sold at public sale, and the proceeds applied in satisfaction of the judgment. The law simply does not permit a judgment creditor to demand the direct turnover of specific assets.

## Argument

### I.   Enforcement of Judgments under the Federal Rules

Federal Rules of Civil Procedure ("Rules") 69 and 70 govern the enforcement of judgments in federal court. Rule 69(a) provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a). The procedure on execution "must accord with the procedure of the state where the court is located." *Id.*

A recent opinion by the Honorable Matthew F. Kennelly of this District Court addresses the exact situation presented here. In *Bobak Sausage Co. v. Bobak Orland Park, Inc., et. al.,* 2008 WL 4814693 (N.D. Ill., November 3, 2008), a judgment creditor sought the turnover of certain non-exempt assets from its debtor. Judge Kennelly issued a Memorandum Opinion and Order denying the direct turnover as inconsistent with state and federal law. That Opinion, attached hereto as Exhibit A, is quoted extensively herein because the issues are identical and the reasoning is sound. The outcome here should be the same.

> Though the first sentence of Rule 69(a) appears to allow some flexibility in the availability of remedies beyond a writ of execution to enforce a money judgment,

2

courts have construed this language narrowly. *Id.,* citing *Aetna Cas. & Sur. Co. v. Markarian,* 114 F.3d 346, 349 (1st Cir. 1997). Specifically, Rule 69(a) "does not authorize enforcement of a civil money judgment by methods other than a writ of execution, except where 'well established principles so warrant.' " *Id.* (quoting 13 J. Moore, Moore's Federal Practice ¶ 69.02, at 69-5 (3d ed. 1997)).

Here, there is no "well-established principle" which even justifies, much less warrants, the direct turnover of un-valued assets to a creditor or its counsel, as permitted by the Court's Minute Order and suggested by Banco's proposed order. (A copy of Banco's proposed order is attached hereto as Exhibit B.

Although courts in the Seventh Circuit and elsewhere have utilized Rule 70[1] to enforce money judgments, its use has been limited to very narrow situations, none of which are applicable here.[2] Judge Kennelly's Opinion specifically notes:

> The size of the award and the difficulties in enforcing the judgment due to the location of the assets and the uncooperativeness of the judgment debtor are not the types of extraordinary circumstances which warrant departure from the general rule that money judgments are enforced by means of writs of execution rather than by resort to the contempt power of the courts. *See, Hilao v. Estate of Marcos,* 95 F. 3d 848 at 855 (9th Cir. 1996).

*Mem. Op.* at *3. Absent any facts or authority supporting the use of Rule 70(a), Banco's enforcement of its Judgment must proceed under Rule 69(a), which commands that it follow Illinois law.

## II. Supplementary Proceedings under the Illinois Code

The Illinois Code of Civil Procedure provides that a judgment creditor may discover assets of the debtor by service of a citation. 735 ILCS 5/2-1402. The Court may then compel

---

[1] Rule 70(a) provides that "if a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done." Fed. R. Civ. P. 70(a).

[2] The First Circuit has identified three situations in which Rule 70(a) may be used to enforce a money judgment: contempt orders for failure to pay statutory obligations; governmental enforcement of tax obligations; and judgments against a state which refuses to appropriate funds. The Seventh Circuit has also approved the use of Rule 70(a) to enforce judgments against the state or an officer thereof. There is no authority for the use of the Rule against a non-governmental judgment debtor such as CSMG.

the judgment debtor to deliver up such non-exempt assets *to the sheriff* to be applied in satisfaction of the judgment. *Id.*

Section 1402(e) of the Illinois Code of Civil Procedure provides:

> All property ordered to be delivered up shall, except as otherwise provided in this Section, be delivered to the sheriff to be collected by the sheriff or sold at public sale and the proceeds thereof applied towards the payment of costs and the satisfaction of the judgment. If the judgment debtor's property is of such a nature that it is not readily delivered up to the sheriff for public sale or if another method of sale is more appropriate to liquidate the property or enhance its value at sale, the court may order the sale of such property by the debtor, third party respondent, or by a selling agent other then the sheriff upon such terms as are just and equitable. The proceeds of sale, after deducting reasonable and necessary expenses, are to be turned over to the creditor and applied to the balance due on the judgment.

735 ILCS 5/2-1402(e). The Section does not authorize, and the Court may not order, the direct turnover of assets from the debtor to the judgment creditor. *Dowling v. Chicago Options Assocs., Inc.* 365 Ill. App. 3d 341, 847 N. E. 2d 741 (1st Dist. 2006). This is so because while the judgment debtor has a vested interest in maximizing the value of any assets sold to satisfy the judgment, the judgment creditor has no such motivation.

In *Dowling*, the judgment debtor appealed the trial court's order to transfer his interests in certain entities directly to the creditor, arguing that they should have been turned over to the sheriff for auction. Relying on *In re Marriage of Pick*, 167 Ill. App. 3d 294, 521 N. E. 2d 121 (1988), the *Dowling* court reversed the trial court, finding that Section 1402(e) "mandates that property to be sold to satisfy a judgment *shall be delivered to the sheriff* for public sale." *Id.* The *Dowling* case was cited with approval in Judge Kennelly's Opinion in *Bobak, Mem. Op.* at 4.

The basic principles of fairness underlying *Dowling* and *Pick*, and particularly *Bobak*, make it plain that Banco may not demand or obtain the direct turnover of any of CSMG's

4

personal property. Banco's overreaching is particularly egregious in this circumstance, as none of the Turnover Assets has been appraised -- any one of them could easily be worth far in excess of the Judgment amount -- and yet, to read Banco's "amended draft order," CSMG would be required to give over all of the Turnover Assets for liquidation by Banco, even if the proceeds of just one would satisfy the Judgment.

Moreover, the Turnover Assets are not "of a nature to be readily delivered up" to the sheriff. The $CO_2$ Scrubber weighs hundreds of thousands of pounds and occupies three-quarters of an acre in Chastang, Alabama. The LTC Stock is not publicly traded and has not been valued for private or public sale purposes. Finally, transfer of the Worldwide Patents is governed by the rules of the United States Patent and Trademark Office. Accordingly, CSMG suggests that it be given a reasonable amount of time to have these assets appraised and liquidated in a manner that maximizes their value.

Banco's references to the protections offered by the UCC should not lure the Court into a false sense of comfort for the fair valuation of CSMG's assets. It is certainly true that the UCC requires a lender's disposition of collateral be "commercially reasonable." However, that term is not defined by the UCC except to the extent that a lender's compliance with certain time periods and forms of notice as provided therein is presumptively "sufficient." *See*, U.C.C. §§ 9-611 through 9-613 (1999).

Having elected not to exercise its rights under the UCC, whether by choice or by defect[3], and instead obtaining a money judgment and engaging in citation and other collection proceedings, Banco is bound by the Federal Rules and, by their specific instruction, by the

---

[3] If Banco had properly perfected its claimed security interests in the business assets of CSMG, then its suit to obtain the Judgment (including the astronomical attorney's fees) and these post-judgment collection proceedings would have been unnecessary. The UCC requires only a default under the security instruments and certain notice procedures in order to entitle the lender to exercise its rights, including but not limited to the sale of the lender's collateral in satisfaction of the debt. *See*, U.C.C. § 9-610 (1999).

Illinois Code of Civil Procedure to satisfy the Judgment. Those rules unequivocally proscribe the direct turnover of any asset to Banco, and require the public sale of the Turnover Assets, or so much of them as is necessary to satisfy the Judgment. CSMG has submitted a proposed order, to Banco and to this Court, which complies with Illinois law regarding the enforcement of judgments. A copy of Defendants' proposed order is attached hereto as Exhibit C.

WHEREFORE, CSMG respectfully requests that this Honorable Court enter an Order (i) amending and modifying the Minute Order dated January 29, 2009 which granted the Turnover Motion, (ii) approving and entering Defendants' proposed form of order, and (iii) providing for such other or further relief as the Court deems just and consistent with applicable law.

CONSORTIUM SERVICE MANAGEMENT GROUP, INC., and CSMG GASTECH, LLC,
Defendants,

By: _____
One of Their Attorneys

David K. Schmitt (ARDC #3128189)
Barbara L. Yong (ARDC #6184000)
Caren A. Lederer (ARDC #6244631)
GOLAN & CHRISTIE, LLP
70 W. Madison, Suite 1500
Chicago, IL 60602
312.263.2300
312.263.0939 fax