# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 15 | **DATE** | 6/16/2009 |
| **CASE TITLE** | Banco Panamericano, Inc vs. Consortium Service Management Group, Inc., et al | | |

**DOCKET ENTRY TEXT**

Defendant's motion to modify minute order [151] is granted. The parties are instructed to appear for status at 9:00 a.m. on June 24, 2009 and be prepared to provide the court with the name of a third-party selling agent to whom the assets can be turned over. Also pending before the court is Banco's Petition for Attorney's Fees and Costs. Defendant does not contest Plaintiff's calculations of costs and fees (Exs. E & F to Petition), and the court grants the petition [136], awarding Plaintiff $474,828.46. (For further details see minute order.)

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

On August 26, 2008, the court granted Plaintiff Banco Panamericano, Inc.'s ("Banco") motion for summary judgment on its claim that Defendant Consortium Service Management Group, Inc. ("CSMG") breached its contract with Banco. *Banco Panamericano, Inc. v. Consortium Serv. Management Group, Inc.*, No. 07 C 15, 2008 WL 4006764 (N.D. Ill. Aug. 26, 2008). On December 23, 2008, this court entered a judgment of $726,491.91, plus post-judgment interest accruing from December 17, 2008. To satisfy this judgment, the court granted Banco's Motion for Turnover and ordered CSMG to deliver to Banco (1) a newly developed piece of equipment called a "CO2 Scrubber," located in Alabama; (2) ownership of stock in Live Tissue Connect, Inc., a majority-owned subsidiary of CSMG; and (3) certain patents on technology.[1] (Minute Order [145].) Defendant still has not paid Plaintiff any money in satisfaction of the judgment, but does not object to the liquidation of these three assets. CSMG does object, however, to turning over the assets directly to the Plaintiff and now moves this court for modification of the minute order granting Plaintiff's Turnover Motion.

In a federal court, the procedure for enforcing a money judgment "must accord with the procedure of the state where the court is located." FED. R. CIV. P. 69(a)(1). Accordingly, the parties do not dispute that Illinois law governs the manner in which the judgment is to be collected. Illinois procedure regarding the collection of judgment allows courts to "[c]ompel the judgment debtor to deliver up, to be applied in satisfaction of the judgment . . . property or effects in his or her possession or control." 735 ILCS 5/2-1402(c)(1). As noted, CSMG does not object to selling the three assets the court identified in the turnover order. The parties do differ, however, on the provision in the statute that governs the sale process. The statute generally contemplates that the property will be delivered to the sheriff for a public sale; however,

> [i]f the judgment debtor's property is of such a nature that it is not readily delivered up to the sheriff for public sale or if another method of sale is more appropriate to liquidate the property or enhance its value at sale, the court may order the sale of such property by the debtor, third party respondent, or by a selling agent other than the sheriff upon such terms as are just and

**STATEMENT**

equitable. *Id.* 5/2-1402(e). Neither party is asking the court to deliver the property to the sheriff (and, as the CO2 Scrubber is in Alabama, delivery to the sheriff would be unwieldy). Rather, the dispute is a narrow one: Plaintiff maintains that Plaintiff itself is an appropriate "selling agent" to dispose of the assets; Defendant asserts that Plaintiff is not.

The court concludes that Defendant is correct. The statute specifically allows the judgment debtor or a third party respondent to conduct the sale, but does not mention the judgment creditor. Plaintiff argues that a judgment creditor is "a selling agent other than the sheriff" and therefore allowed to make the sale. The statute does not specifically name the judgment creditor as a possible selling agent, however. As a judgment creditor will almost always be involved in cases invoking this statute, this silence indicates to the court that judgment creditors themselves ought not ordinarily be permitted to conduct the asset sale. Plaintiff cited no Illinois cases in which a judgment creditor is permitted to sell the assets itself, nor has the court found any such cases (outside of the context of real property). *Cf. Bobak Sausage Co. v. Bobak Orland Park, Inc.*, No. 06 C 4747, 2008 WL 4814693, at *4 (N.D. Ill. Nov. 3, 2008) (denying judgment creditor's motion for turnover of debtor's interest in an LLC). Finally, Defendant contends that Plaintiff lacks the incentive to maximize the sale value of the assets at issue. The court is less certain; given Defendant's delay in paying its conceded liability, the court presumes Plaintiff has every interest in maximizing its recovery from these assets. In any event, to the extent that Defendant's concern is a valid one, it could largely be addressed by holding Plaintiff to a standard of commercial reasonableness in conducting the sale. Because it is theoretically possible that these unvalued assets in fact exceed the amount owed under the judgment, however, the court agrees that turnover of the assets should be made to a party other than Plaintiff.

Defendant's Motion to Modify Minute Order [151] is therefore granted. Defendant proposes turning the property over to the United States Marshals Office, but the court declines to so order. The property at issue, particularly the CO2 Scrubber and the patents, are valued in a highly specialized market about which the parties have much more knowledge than the court. The parties are directed to agree upon a third-party selling agent to take immediate possession of the assets at issue and to arrange for a prompt public sale of those assets. The court expects the parties to proceed with the sale as quickly as reasonably possible; the judgment in Plaintiff's favor is now over nine months old and Plaintiff has yet to receive any payment from Defendant despite the fact that Defendant has not disputed the judgment. The value of the equipment itself, and the stock shares, may well be devalued by the passage of time. The parties are instructed to appear for status at 9:00 am on June 24, 2009 and be prepared to provide the court with the name of a third- party selling agent to whom the assets can be turned over.

Also pending before the court is Banco's Petition for Attorney's Fees and Costs. As the prevailing party, Banco is entitled to an award of costs under the Federal Rules. Fed. R. Civ. P. 54(d)(1). Banco is also entitled to an award of attorney's fees based on the promissory note breached by CSMG, which states that CSMG must pay Banco's "attorneys fees and . . . legal expenses." (Promissory Note at 3, Ex. A to Pet. [136].) Defendant does not contest Plaintiff's calculations of costs and fees (Exs. E & F to Pet. [136]), and the court awards Plaintiff $474,828.46.

1. Plaintiff has asserted that it holds a security interest in some or all of this property, but no financing statements have been submitted to the court, nor has Plaintiff, to the court's knowledge, sought to enforce the alleged security interest. As the court understands the law, a creditor who does possess a perfected security interest has the right to sell the assets without seeking a turnover order from this court. *See* 810 ILCS 5/9-610(a) ("After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.").